# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| AUTHENTICOM, INC.,<br><br>    Plaintiffs,<br><br>v.<br><br>CDK GLOBAL, LLC, and THE REYNOLDS AND REYNOLDS COMPANY,<br><br>    Defendants. | No. 3:17-CV-318-JDP |

**DEFENDANT THE REYNOLDS AND REYNOLDS COMPANY'S OPPOSITION TO PLAINTIFF AUTHENTICOM, INC.'S REQUEST FOR "AN EXPEDITED BRIEFING AND HEARING SCHEDULE" ON ITS UNTIMELY MOTION FOR PRELIMINARY INJUNCTION (DKT. 51)**

In response to Plaintiff Authenticom, Inc.'s untimely request for an "expedited" briefing schedule that would allow Defendant The Reynolds and Reynolds company only 20 days to respond to the nearly 2,000 pages of materials served by Authenticom late yesterday and early this morning, Reynolds states as follows:

The Court should summarily deny Authenticom's motion for a mandatory preliminary injunction that would reverse the decade-plus old status quo. *See* Dkt. 51. Authenticom is seeking here what it has been unsuccessful in obtaining for over a decade: unlawful access to the proprietary software system owned and operated by Reynolds. The preliminary injunction papers reveal on their face a *prima facie* dispositive flaw: Authenticom's inexcusable multi-year delay in bringing suit. Authenticom itself admits it is challenging a widely publicized Reynolds policy that has been in place since 2007, that Reynolds has been enforcing "in earnest" since at least 2011, and that supposedly "resulted in an almost complete collapse of Authenticom's

integration business for dealer data for dealers using the Reynolds DMS" in "*the summer of 2013*"—four years ago. Compl. ¶¶ 6, 92, 189 (emphasis added) (Dkt. 1).

Authenticom belatedly seeks "an expedited briefing and hearing schedule," Mot. at 1 (Dkt. 51), in an effort to obtain through hurried judicial intervention something it *never* has enjoyed—unfettered username and password access to Reynolds' proprietary system, and a massive reordering of Reynolds' dealer and vendor contracts and (as admitted by Authenticom) longstanding software-access policies. Compl., Prayer for Relief (d)-(f), p. 90 (Dkt. 1); Proposed Order at 1-2 (Dkt. 51-1). Authenticom's extraordinary delay and manufactured "emergency" exposes its case against Reynolds for what it is: a meritless effort to shift responsibility for Authenticom's decade-plus attempts to gain unlawful access to Reynolds' proprietary software system, without adequate time for Reynolds to prepare and present its counterclaims and defenses. *Cf. Silber v. Barbara's Bakery, Inc.*, 950 F. Supp. 2d 432, 442 (E.D.N.Y. 2013) ("a months-long delay before seeking an injunction suggests that a plaintiff does not believe she has a viable claim, but is merely seeking preliminary relief as a commercial strategy to impede a successful competitor"); *Doe v. Banos,* 713 F. Supp. 2d 404, 415 n.15 (D.N.J.) ("the delay in seeking relief here was part of a litigation strategy and occasioned in part because [plaintiff] was unwilling or unable to obtain the desired relief by challenging the 24/7 Policy directly in … other fora"), *aff'd,* 416 Fed. Appx. 185 (3d Cir. 2010).

Before the Court orders such a fundamental disruption in Reynolds' proprietary system and long-standing policies—not to mention a complete reordering of its customer and vendor contracts—Reynolds must be allowed to develop its defenses. Authenticom's requested relief would be unprecedented even after a full merits trial, and would be unconscionable on the expedited preliminary injunction schedule it seeks. *See* Mot. at 1.

As shown in Part I below, Authenticom's long delay in bringing suit in and of itself bars Authenticom from establishing "irreparable injury," an essential threshold requirement for the issuance of any preliminary relief. *See, e.g.*, *BBL, Inc. v. City of Angola,* 809 F.3d 317, 323-24 (7th Cir. 2015) (movant must establish "it will suffer irreparable harm in the period before final resolution of its claims"). The Court thus should summarily deny Authenticom's preliminary injunction motion; set a trial date that appropriately reflects the range and complexity of the cybersecurity, contractual, and antitrust issues presented by Authenticom's ~2,000 pages of filings and expert materials; and work backwards from that trial date in setting the pretrial schedule.

As discussed in Part II, if the Court requires a full response to Authenticom's egregiously untimely motion for a preliminary injunction, it should establish a schedule that allows Reynolds sufficient time to retain counter-experts from diverse fields (cybersecurity, antitrust, and financial analysis), conduct fact and expert discovery, and respond to Authenticom's massive preliminary injunction submission (which totals more than 650 pages and includes three expert declarations, five fact witness declarations, over 70 exhibits, and 281 proposed findings of fact, *see* Dkts. 51-72, and also includes more than 1,300 pages of separately served materials relied on by its experts). Authenticom and its counsel obviously have been crafting their preliminary injunction papers for many months at a minimum. Reynolds and its counsel are entitled to have at least as long to respond to Authenticom, particularly since Authenticom is seeking *mandatory* preliminary relief that would radically change the long-standing status quo.[1]

---

[1] As this Court recently emphasized, "[w]hen the movant seeks a mandatory injunction, 'an injunction requiring an affirmative act by the defendant,' the motion must be 'cautiously viewed' and granted only 'sparingly.'" *Brown v. Miller*, No. 16-cv-682-jdp, 2017 WL 1401361, at *1 (W.D. Wis. Apr. 19, 2017) (quoting *Graham v. Med. Mut. of Ohio*, 130 F.3d 293, 295 (7th Cir. 1997)).

And for the same reasons that Authenticom's extreme delays prevent it from establishing cognizable "irreparable injury," those delays undermine its plea to truncate Reynolds' response time due to the supposedly "imminent collapse of its business" resulting from long-developing banking and tax difficulties. Mot. at 1 (Dkt. 51); *see also id.* at 2-3; Authenticom's May 1, 2017 "Emergency Motion for Status Conference and Preliminary Injunction Schedule" at 1 (Dkt. 5) (arguing several weeks ago that this case required "urgency" because of Authenticom's financial "emergency"). Any "emergency" or "urgency" here is entirely of Authenticom's own making and easily could have been avoided if Authenticom had sued before now, which it could have done long ago.

## I. Authenticom Is Not Entitled to a Preliminary Injunction After Waiting For So Many Years To Bring Suit.

Reynolds owns and operates a proprietary information management system for retail automotive dealers, known generally as a "Dealer Management System" or "DMS." The Reynolds DMS includes hardware and software applications that enable automobile dealers to manage inventories, customer contacts, financial and insurance information, transactional details, and other tasks involved in managing an auto dealership. Authenticom calls itself a "dealer data integration provider." Compl. ¶ 2 (Dkt. 1). It admits it offers "no *actual* 'integration'" services "in the traditional sense"; "[i]nstead, in this context, 'integration' is *simply a synonym for data access*." *Id.* ¶ 54 n.4 (emphases added). In short, Authenticom's business model is to "serve[] as a bridge" on behalf of third-party "vendors" to get "access" to "dealer data" inside the proprietary Reynolds Dealer Management System, *over Reynolds' objections. Id.*

Authenticom claims the right to "bridge" into the Reynolds DMS *over Reynolds' objections*; to "pull," "extract," and "scrape" data from within the Reynolds DMS for sale to third-party vendors; and to "'push' data back into the database" in altered form. *Id.* ¶¶ 50, 54-55

& n.4, 77-80. Authenticom freely admits that, in response to Reynolds' longstanding efforts to prevent Authenticom and others from hacking into the Reynolds DMS, Authenticom has attempted for years to "navigate around" Reynolds' "blocking efforts" through various "workaround solutions," including "user emulation" (*i.e.,* falsely claiming to be dealers logging into their own DMS accounts). *Id.* ¶¶ 55, 195; [Redacted] Mem. in Support of Preliminary Injunction at 8 (Dkt. 67) (discussing Authenticom's efforts to "work[] with dealers to develop workaround solutions that circumvented Reynolds' efforts to block access").

Thus, the "status quo" is that Reynolds does not allow Authenticom (or anyone else) to hack into its system, and Authenticom admits Reynolds has not allowed such access for at least a decade. *Id.* ¶ 6. Authenticom seeks to change that status quo pending trial through a *mandatory* preliminary injunction barring Reynolds, among many other things, "from blocking or disabling Authenticom's access" to Reynolds' system. *Id.*, Prayer for Relief(f), at 90; *see also* Proposed Order at 1-2 (Dkt. 51-1).[2]

The complaint and preliminary injunction papers *on their face* show that Authenticom could have filed this suit seeking this relief many years ago:

- Authenticom admits that "Reynolds started to block data integrators"—including Authenticom itself—in 2007, a full decade ago. *Id.* ¶ 6.

- Authenticom complains that "Reynolds first started disabling Authenticom's usernames in 2009"; that Reynolds started blocking unauthorized access to its DMS "in earnest" in 2011; and that "Reynolds intensified its tactics" in June 2013 "by disabling Authenticom's usernames en masse," which "resulted in an almost

---

[2] Authenticom is thus flatly wrong in claiming that its requested injunction "would simply restore the state of affairs that existed before" February 2015. [Redacted] Mem. at 45 (Dkt. 67). Reynolds has prohibited unauthorized access to its proprietary system for at least a decade, and the injunction would be an extraordinary departure from that longtime policy.

- complete collapse of Authenticom's integration business for dealer data for dealers using the Reynolds DMS." *Id.* ¶¶ 92, 189; *see also id.* ¶ 220 (by 2013 Reynolds was "block[ing] independent data integrators and impos[ing] (and enforc[ing]) exclusivity provisions in its contracts with dealers and vendors"); [Redacted] Mem. at 8 (Dkt. 67) (discussing Reynolds' escalat[ing]" efforts since 2007 to block Authenticom's access to its DMS).

- Authenticom admits that its alleged financial losses from Reynolds' "blocking" efforts have been ongoing "*[f]or years*." [Redacted] Mem. at 16 (Dkt. 67) ("For years, Authenticom suffered customer losses and slower growth because of Reynolds' blocking.") (emphasis added); Cottrell Decl. ¶ 76 (Reynolds' blocking has been harming Authenticom "[f]or years").

- Authenticom admits that Reynolds has "regularly" objected to Authenticom's tactics and threatened it with litigation for tortious interference with Reynolds' contracts with dealers, which forbid "third party access" not authorized by Reynolds. Compl. ¶ 156. Authenticom points to an alleged threat of litigation by Reynolds in April 2015, over two years ago. *Id.*; *see also id.* ¶ 185. And it complains about "multiple" alleged attempts by Reynolds "to coerce Authenticom to exit the Dealer Data Integration Market," including in May 2015. *Id.* ¶ 185.

- Authenticom claims that Reynolds and CDK Global, LLC ("CDK") entered into an unlawful conspiracy in February 2015, and that it learned of this supposed "conspiracy" to "lock out" and "block competitors like Authenticom" in May 2015, two years ago. *Id.* ¶ 181; *see also id.* ¶¶ 10, 179-80.

Authenticom claims that it *now* suddenly faces a threat of irreparable injury because it defaulted on an $11 million bank loan payment that was due April 16, 2017 and failed to pay "an approximately $1.17 million tax-related obligation due April 18." *Id.* ¶ 233.  Although Authenticom easily could have brought suit against Reynolds many years ago, it claims there *now* is an "urgency" and "emergency" requiring a preliminary injunction because BMO Harris Bank supposedly has only agreed to grant "a limited 90-day forbearance"—until July 15—"pending the outcome of the forthcoming preliminary injunction motion." *Id.*; *see also* [Redacted] Mem. at 17 (Dkt. 67).  Authenticom claims that its supposed inability to obtain a longer forbearance from its bank or a better deal from other potential lenders establishes irreparable injury, thus requiring the "extraordinary" and "drastic" remedy of a preliminary injunction.  *See* Compl. ¶ 233 (Dkt. 1); [Redacted] Mem. at 41 (Dkt. 67); Cottrell Decl. ¶¶ 83-84 (Dkt. 62); Klein Rep. ¶¶ 6, 29, 33 (Dkt. 59).[3]

Authenticom knew of its impending default on the BMO Harris loan and potential "collapse" over ▇▇▇ ago.  [Redacted] Mem. at 2, 12 (Dkt. 67).  This is best shown in the report of its financial expert, Gordon Klein, which Authenticom has only filed under seal with no redacted version provided.  Dr. Klein admits that "   Klein Rep. ¶ 36 (Dkt. 59).  And 

---

[3] "'[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion.'" *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (citation omitted); *see also Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 389 (7th Cir. 1984) ("'[T]he granting of a preliminary injunction is an exercise of a very far-reaching power, never to be indulged in except in a case clearly demanding it.'") (citation omitted).  And as noted above, this remedy is even *more* "cautiously" and "sparingly" applied where, as here, the movant seeks a *mandatory* injunction changing the existing status quo prior to trial.  *Brown v. Miller*, 2017 WL 1401361, at *1; *see* n.1 *supra*.

██████████████████████████████████████████████████████████

██████████████████████████████████████████████ *Id.* ¶ 33.

Curiously, even after Authenticom claims to have been told by BMO Harris in mid-April that it had only 90 days to procure an acceptable preliminary injunction from this Court (Compl. ¶ 233 (Dkt. 1)), it let over a third of that forbearance period slip by without even filing its motion and supporting evidence.

Further undermining the credibility of the alleged "emergency," Authenticom missed its own self-declared deadline to file its preliminary injunction papers. On May 1, Authenticom advised the Court that, "*[i]n light of the imminent irreparable harm that Authenticom is facing,*" it would file its motion and supporting materials "*on or before May 10, 2017.*" Emergency Mot. at 4 (Dkt. 5) (emphasis added). Judge Conley denied that "emergency" motion the following day (May 2), directing Authenticom to file its preliminary injunction motion and supporting papers *first*, after which "the court will determine the appropriate briefing schedule and whether a status conference is required." Text Order (Dkt. 8). Judge Conley recommended that Authenticom proceed with dispatch, and cautioned that "the briefing schedule will depend, at least in part, on the date and manner of service of that motion on defendants." *Id.* Inexplicably, Authenticom let its own declared deadline—Wednesday, May 10—come and go by over a week without filing anything or offering any explanation for its delay.

Authenticom's theory of "irreparable injury" is both audacious and spurious. The Seventh Circuit and district courts in this Circuit repeatedly have held that potential plaintiffs cannot delay seeking judicial relief and then belatedly sue and claim impending "irreparable injury" requiring a preliminary injunction. This is because

> a delay in requesting equitable relief is inconsistent with a claim of irreparable injury. … If a plaintiff has already been subjected to the putative harm caused by

> the defendants' conduct for a significant period of time, he or she cannot credibly argue that pressing hardship requires injunctive relief in the interim before the underlying matter is resolved. … This unnecessary and counterproductive delay in seeking relief … weighs against a finding of irreparable harm.

*Taylor v. Biglari,* 971 F. Supp. 2d 847, 853-54 (S.D. Ind. 2013) (citation of Seventh Circuit authority omitted) (three-month delay); *see also Jones v. Markiewicz-Qualkinbush*, 842 F.3d 1053, 1060, 1062 (7th Cir. 2016) (district court "was on solid ground" in determining that plaintiffs' "delay in bringing suit was 'the most important driver of the decision'" to deny a preliminary injunction; plaintiffs "could have acted" at least three months sooner); *Ty, Inc. v. Jones Grps., Inc.*, 237 F.3d 891, 902-03 (7th Cir. 2001) ("Delay in pursuing a preliminary injunction may raise questions regarding the plaintiff's claim that he or she will face irreparable harm if a preliminary injunction is not entered."); *Essentia Health v. Gundersen Lutheran Health Sys., Inc.*, No. 17-CV-100-WMC, 2017 WL 1318112, at *8 (W.D. Wis. Apr. 7, 2017) (Conley, J.) (finding plaintiff's claim of "irreparable harm" was "weak" and "insufficient" given two-year delay in seeking relief against defendant's ongoing conduct) (citation omitted); *Carson Grp., Inc. v. Davenport*, No. 16-CV-10520, 2016 WL 7212522, at *7 (N.D. Ill. Dec. 13, 2016) (denying preliminary injunction where plaintiff knew about alleged illegal conduct in January 2016 but did not bring suit until the following November); *Ohr v. Arlington Metals Corp.*, 148 F. Supp. 3d 659, 673-74 (N.D. Ill. 2015) (denying preliminary injunction where plaintiff delayed 15 months before seeking relief; "when 'the party seeking injunctive relief has knowledge of the pending nature of the alleged irreparable harm,' its delay further cuts against the likelihood of irreparable injury") (citation omitted).[4]

---

[4] This principle is widely and routinely applied in antitrust and unfair trade practice litigation. *See, e.g.,* 6 CALLMANN ON UNFAIR COMPETITION, TRADEMARKS AND MONOPOLIES § 23:47 & n.30 (4th ed. Dec. 2016 update) (citing several dozen cases in support of the proposition that "[t]he plaintiff's lack of diligence in pursuing preliminary relief is evidence of a

The cases cited above denied preliminary injunctive relief where plaintiffs had inexcusably waited several months or even a year or two. Here Authenticom is seeking mandatory preliminary relief against a core Reynolds policy that has been in effect for at least a *decade*. And as the complaint's own citations demonstrate, Reynolds has been publicly advertising this policy, and it has been well known throughout the automotive world, for nearly as long. *See* Compl. ¶ 65 & n.6 (*re* "Reynolds Crackdown"), ¶ 70 & nn.10-11 (all citing articles regarding Reynolds' bar on hostile data "integrators" from 2006, 2007, and 2011). Authenticom's extraordinary delay precludes a finding of any cognizable "irreparable injury" and, "*standing alone*," requires that its preliminary injunction motion be denied.[5]

## II. If The Court Requires Defendants to Prepare a Full Opposition to Authenticom's Belated Preliminary Injunction Motion, It Should Give Them Sufficient Time to Retain Experts, Conduct Discovery, and Prepare Dispositive Motions.

If the Court requires a full response to Authenticom's preliminary injunction filings, there is no reason to truncate the usual preliminary injunction process. Authenticom's claim that it "has received a limited 90-day forbearance—*i.e.,* until July 15, 2017—from the Bank pending

---

lack of irreparable harm"); C.A. Wright *et al.*, FED. PRAC. & PROC. CIV. § 2948.1 n.13 (3d ed. Apr. 2017 update) (collecting numerous authorities finding lack of irreparable injury where plaintiffs had waited for several months or longer before seeking injunctive relief).

[5] *Tough Traveler, Ltd. v. Outbound Prods.*, 60 F.3d 964, 968 (2d Cir. 1995) (vacating preliminary injunction where plaintiff had waited a year before seeking preliminary relief; plaintiff's "leisurely pace" and "manifest delay" were, "*standing alone*," sufficient to "preclude" any preliminary injunctive relief) (citations and internal quotation marks omitted, emphasis added); *see also Doe v. Banos,* 713 F. Supp. 2d at 415 n.15 (plaintiff's "lack of urgency" in seeking preliminary injunction "undermines his claim of immediate and irreparable harm …, a necessary finding for pre-judgment relief," and was "reason alone to deny the relief sought here"); *Union Cosmetic Castle, Inc. v. Amorepacific Cosmetics USA, Inc.*, 454 F. Supp. 2d 62, 70 (E.D.N.Y. 2006) (antitrust plaintiffs were unable to demonstrate irreparable injury "as a matter of law" where they had been aware of defendants' alleged misconduct for seven months prior to filing suit); *Pharmacia Corp. v. Alcon Labs., Inc.,* 201 F.Supp.2d 335, 382-83 (D.N.J. 2002) (delay of "one full year" in seeking preliminary injunction "knocks the bottom out of any claim of immediate and irreparable harm," and provided a "separate" and "dispositive basis" for denying preliminary relief).

the outcome of this preliminary injunction motion" does not entitle it to dictate its preferred schedule, given that it waited for years to bring suit. [Redacted] Mem. at 17 (Dkt. 67).[6] Indeed, it is clear from Authenticom's ~650 page preliminary injunction filings and ~1,300 page expert productions that it has been in the process of preparing its case for many months at the very least. Indeed, it took Authenticom more than 9 hours just to electronically file and serve its preliminary injunction papers alone, concluding with an expert document production to Defendants at 1:15 a.m. this morning. Having taken its time in putting together its submission in recent months, and having missed its own promised filing date by a longshot, *see* p. 8 *supra*, Authenticom is in no position to insist that this Court's already-accelerated preliminary injunction process be shortened even further.

If the Court requires a full response to Authenticom's untimely preliminary injunction motion, Reynolds requests that it be given a sufficient period to retain experts, conduct fact and expert discovery, and enable its experts to formulate their opinions before being required to file its opposition and supporting evidence. Reynolds believes this approach is especially

---

[6] Even if Authenticom's alleged banking and tax problems could constitute cognizable "irreparable injury"—and they cannot—its preliminary injunction papers continue to make only cursory claims that its banker will only grant it a 90-day forbearance and that it has no feasible alternative financing options. Its financial expert claims only that ███████████████████ ███████████████████████████, but fails to address ███████████████████████ ██████████████████████████████████████████. Klein Rep. ¶ 6 (Dkt. 50). And its claims of "imminent collapse" appear to be based on alleged rejections by only two potential lenders—BMO Harris (its current lender) and Citizens State Bank, both of which occurred over ███████. *Id.* ¶ 33. This falls far short of the required proof that a plaintiff has exhausted its potential financial alternatives. *See, e.g., Contech Casting, LLC v. ZF Steering Sys., LLC*, 931 F. Supp. 2d 809, 820-21 (E.D. Mich. 2013) ("The Court is simply not convinced that Plaintiff has exhausted other reasonable options at its disposal to resolve its current financial situation. … [T]he glaring failure of Plaintiff to pursue other reasonable alternatives to avoid the harm it claims is imminent fundamentally undermines its contention of irreparable injury."); *Sieren v. William R. Hague, Inc.*, 999 F. Supp. 1244, 1246 (E.D. Wis. 1998) (unsupported allegations of impending business failure did not establish irreparable injury; "[t]he plaintiffs simply do not give the court enough information about their financial status").

appropriate given the range and complexity of expert issues presented in Authenticom's preliminary injunction filings.

Reynolds intends no later than July 3 to file one or more counterclaims against Authenticom for its ongoing tortious interference with Reynolds' contractual relationships with its dealers, consistent with Reynolds' repeated warnings to Authenticom. *See* Compl. ¶¶ 156, 185 (Dkt. 1). Reynolds also intends to file a motion to dismiss many if not all of Authenticom's claims pursuant to Fed. R. Civ. P. 12(b)(6) no later than July 3. Among many other fatal flaws, Authenticom's complaint on its face fails to define an appropriate product market or "single-brand aftermarket,"[7] fails to plead any cognizable anticompetitive conduct or antitrust injury, and attempts to plead a novel theory of "duopoly" liability, which does not exist as a matter of law under the Sherman Act.

Rather than devoting scarce time and resources to an untimely preliminary injunction motion that must inevitably be denied, Reynolds believes the parties, the Court, and the public interest would be far better served by focusing over the coming months on briefing dispositive Rule 12 motions, conducting appropriate fact and expert discovery, and preparing for a trial on the merits of any remaining claims. *See also* Fed. R. Civ. P. 65(a)(2) (authorizing district court to "consolidate" the preliminary injunction hearing with "the trial on the merits"); 1966 Advisory Comm. Note to Rule 65(a)(2) (consolidating preliminary injunction hearing with trial on the merits can avoid "[r]epetition of evidence," "expedite the final disposition of the action," and increase "efficiency in the conduct of the case … without any distortion of the presentation of evidence by the parties"). Such an approach inevitably would narrow the issues and avoid

---

[7] Authenticom's claim that there is a relevant "Dealer Data Integration Market" that includes unauthorized hacking into Dealer Management Systems and a "single-brand aftermarket" in data taken from Reynolds' DMS, *see* Compl. ¶¶ 47-116, is like claiming there is a relevant market in burglary and an "aftermarket" in stolen goods.

unnecessary waste of judicial resources.  If, however, the Court determines to hear the preliminary injunction request before trial despite Authenticom's demonstrated lack of diligence and "urgency," Dkt. 5 at 1, defendants must— in the interests of justice and judicial efficiency —be given appropriate time to respond to Authenticom's several hundred pages of briefing, expert reports, fact declarations, proposed findings, and proposed exhibits.

DATED:  May 19, 2017

Kathy Patrick
kpatrick@gibbsbruns.com
Aundrea K. Gulley
agulley@gibbsbruns.com
Brian T. Ross
bross@gibbsbruns.com
Brice A. Wilkinson
bwilkinson@gibbsbruns.com
Ross M. MacDonald
rmacdonald@gibbsbruns.com
**GIBBS & BRUNS, LLP**
1100 Louisiana, Suite 5300
Houston, Texas  77002
Telephone:  713-650-8805
Facsimile:   713-750-0903

Michael P.A. Cohen
MCohen@sheppardmullin.com
**SHEPPARD MULLIN RICHTER & HAMPTON LLP**
Suite 100
2099 Pennsylvania Avenue, N.W.
Washington, D.C. 20006
Telephone:  202-747-1900
Facsimile:  202-747-1901

Respectfully submitted,

s/ *Charles G. Curtis, Jr.*
John S. Skilton
JSkilton@perkinscoie.com
Charles G. Curtis, Jr.
CCurtis@perkinscoie.com
Michelle M. Umberger
MUmberger@perkinscoie.com
Jesse J. Bair
JBair@perkinscoie.com
**PERKINS COIE LLP**
One East Main Street, Suite 201
Madison, WI 53703
Telephone:  608-663-7460
Facsimile:  608-663-7499

*Attorneys for Defendant
The Reynolds and Reynolds Company*