# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| AUTHENTICOM, INC.,<br><br>Plaintiff,<br><br>v.<br><br>CDK GLOBAL, LLC, and THE REYNOLDS AND REYNOLDS COMPANY,<br><br>Defendants. | No. 3:17-CV-318-JDP<br><br>**PUBLIC REDACTED VERSION** |

**DEFENDANT CDK GLOBAL, LLC's OPPOSITION
TO PLAINTIFF AUTHENTICOM, INC.'S REQUEST FOR AN
EXPEDITED BRIEFING AND HEARING SCHEDULE ON
ITS MOTION FOR PRELIMINARY INJUNCTION**

Defendant CDK Global, LLC ("CDK") joins in The Reynolds and Reynolds Company's ("Reynolds") opposition to Authenticom's Motion for Preliminary Injunction (Dkt. 51, "Mot."). As detailed therein, Authenticom's own complaint and moving papers show that it filed suit *years* too late to seek the extraordinary remedy of a mandatory preliminary injunction. *See* [Redacted] Reynolds Resp. (Dkt. 75) at 4-10. Having sat on its hands for so long before bringing suit, Authenticom "cannot credibly argue that pressing hardship requires injunctive relief in the interim before the underlying matter is resolved." *Taylor v. Biglari*, 971 F. Supp. 2d 847, 853 (S.D. Ind. 2013). Authenticom's inexcusable delay precludes both the relief it seeks and the manifestly unworkable "expedited" briefing and hearing schedule that it proposes.[1]

---

[1] Many courts have held that such years-long delay in bringing suit, "standing alone," is sufficient to deny the extraordinary remedy of preliminary injunctive relief. *Tough Traveler, Ltd. v. Outbound Prods.*, 60 F.3d 964, 968 (2d Cir. 1995). *See also Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc.*, 182 F.3d 598, 603 (8th Cir. 1999); *Imagenetix, Inc. v. GNC Holdings, Inc.*, 2013 WL 12100701, at *3 (S.D. Cal. Mar. 29, 2013); *Burger v. Hartley*, 2011 WL 6826645, at *2 (S.D. Fla. Dec. 28, 2011); *Mortensen v. Mortg. Elec. Registration Sys., Inc.*, 2010 WL 11425328, at *8 (S.D. Ala. Dec. 23, 2010); *CHS, Inc. v. PetroNet, LLC*, 2010 WL 4721073, at

## ARGUMENT

It is undisputed that CDK's challenged policy restricting Authenticom from accessing its Dealer Management System ("DMS") software was adopted and announced nearly *two years* ago, in 2015. *See* [Redacted] Compl. (Dkt. 4) ¶ 99. The challenged Reynolds policy has been in place even longer—since 2007. *Id.* ¶ 6. Authenticom, however, inexplicably waited to file suit against CDK and Reynolds until now, when it suddenly claims to be on the brink of insolvency and financial ruin. *See* Mot. at 2-3; [Redacted] Mem. (Dkt. 67) at 16-17. This years-long delay in bringing suit "knocks the bottom out of any claim of immediate and irreparable harm" and by itself is a "dispositive basis" to deny preliminary injunctive relief. *Alcon Labs.*, 201 F. Supp. 2d at 383. *See also* Reynolds Resp. at 8-9 & 10 n.5 (citing cases).

Moreover, Authenticom should not be permitted to rely on its own delay to justify the expedited briefing and hearing schedule that it proposes. Authenticom's initial moving papers span hundreds of pages of briefing, statements of "fact", declarations, and exhibits, including opinion testimony offered by three different expert witnesses. Nevertheless, Authenticom asks that CDK and Reynolds file their responses to its preliminary injunction motion in 20 days (thereby allowing for no discovery), and prepare for an evidentiary hearing by June 22. Mot. at 1. All told, Authenticom is asking that the Court impose the extraordinary remedy of a preliminary injunction in just over a month's time. That is unfair, and unworkable. If the Court is inclined to hold a preliminary injunction hearing at all, it should be on a full and complete record, not the self-serving record that Authenticom created while it delayed filing suit.

---

*3 (D. Minn. Nov. 15, 2010); *Berndt v. California Dep't of Corr.*, 2010 WL 11485028, at *6 (N.D. Cal. June 3, 2010); *Pharmacia Corp. v. Alcon Labs., Inc.,* 201 F. Supp. 2d 335, 383 (D.N.J. 2002). CDK reserves the right to address this and other grounds for denial of Authenticom's preliminary injunction motion if full briefing on the motion is required.

## I. Authenticom's Years-Long Delay In Bringing This Lawsuit Precludes It From Seeking A Preliminary Injunction Against CDK.

Like Reynolds, CDK provides proprietary DMS enterprise software and applications to automotive dealers, who use DMS to manage their operations and information. Compl. ¶¶ 20, 28-29. Over CDK's objections and without its consent, Authenticom seeks to gain "access" to "dealer data" inside the proprietary CDK DMS database on behalf of other third-party vendors; to "pull[]," "scrap[e]" and "extract[ ]" dealer data for sale to the vendors; and to "push" dealer data back into the DMS in altered form. *Id.* ¶¶ 50, 54-55 & n.4, 77-80.

Entry of the requested preliminary injunction would overturn the longstanding *status quo* by, among other things, prohibiting CDK from "[b]locking, disabling, or otherwise interfering with Authenticom's … access to the dealers' data." P-I Mot. Proposed Order (Dkt. 51-1) at 1. As Authenticom repeatedly admits, it and other "independent integrators"[2] have been "block[ed]" from accessing dealer data in CDK's DMS pursuant to a Third-Party Access ("3PA") program announced by CDK nearly *two years* ago, in July 2015. *Id.* ¶ 98-99.

In fact, Authenticom asserts that CDK's challenged 3PA program stems from an "illegal agreement" between CDK and Reynolds "to restrict access to dealer data," which Authenticom claims that it actually learned about in May 2015, months *before* CDK's 3PA announcement was even made. *Id.* ¶¶ 7, 181. Authenticom could have filed suit and moved for the injunction it now seeks either when it supposedly learned of the "illegal" agreement between CDK and

---

[2] Although Authenticom refers to itself a "data integrator" and alleges a "Dealer Data Integration Market" (*see* Compl. ¶¶ 47-63), it admits that "there is no actual 'integration'" taking place; and "in this context, 'integration' is simply a synonym for data access." Compl. ¶ 54 n.4.

Reynolds in May 2015, or when the 3PA program was actually rolled out in June. But inexplicably, Authenticom waited *two years* to do so.³

It is well-settled that a plaintiff who delays filing suit for even a few *months* can be foreclosed from seeking preliminary injunctive relief. *See* Reynolds Resp. at 8-9. And here, the complaint shows on its face that Authenticom engaged in inexcusable delay for *years* as to CDK and *many more years* as to Reynolds. *See id.* at 5-6.⁴

And it is not enough that Authenticom is supposedly "facing imminent bankruptcy" and is "cash flow insolvent, cannot satisfy its obligations to its creditors, and cannot obtain additional credit" (*see* Mot. at 2-3)—none of which befell Authenticom overnight (or even in the last few weeks). Authenticom makes clear that it believes its business has been "crippled" since 2015, when Defendants supposedly "intensified their blocking efforts." Compl. ¶ 233; [Redacted] Mem. at 40. And indeed, [Redacted] . *See* Reynolds Resp. (Dkt. 74) at 7-8. Once again, "[a] party cannot delay ... and then use an 'emergency' created by its own decisions concerning timing to support a motion for preliminary injunction." *Max-Planck-Gesellschaft Zur Forderung Der Wissenschaften E.V. v. Whitehead Institute for Biomedical Research*, 650 F. Supp. 2d 114, 123 (D. Mass. 2009). *See also Galaton*

---

³ In addition, the complaint alleges events throughout all of *last year* that should have prompted Authenticom to take action as well. *See, e.g.*, Compl. ¶ 180 (alleged admission of unlawful conduct by a CDK executive in April 2016) and ¶ 188 (Authenticom was warned in August 2016 that CDK would "complete the removal" of any "unauthorized third-party access methods" by the end of the year, and thereafter CDK "would 'further increase our security actions to prevent the use of unapproved data access methods.'").

⁴ Authenticom is incorrect (*see* [Redacted] Mem. at 45) that its requested injunction "would simply restore the state of affairs that existed before" February 2015, as it has been barred from accessing the Reynolds DMS since at least 2007, *eight years* prior. *Supra* at 2; Reynolds Resp. at 5-6. In any event, however, this is a striking admission that Authenticom waited *over two years* to seek any form of injunctive relief, even under its own distorted view of the facts.

*v. Johnson*, 2011 WL 9688271, at *2 (E.D.N.C. Aug. 17, 2011) ("Galaton's argument that he is likely to suffer irreparable harm is due to his own delay. Equity need not and will not provide a balm for [a] self-inflicted wound.") (citation omitted); *Quince Orchard Valley Citizens Ass'n, Inc. v. Hodel*, 872 F.2d 75, 79 (4th Cir. 1989) (affirming denial of preliminary injunction where "much of the [movant's] potential harm was a product of its own delay in pursuing this action").

## II. Authenticom's Proposed Schedule Is Unreasonable.

If the Court is inclined to proceed to a hearing, it is now obvious from the sheer volume of materials—totaling nearly 2,000 pages, including roughly 1,300 pages of expert reliance material (produced, but not filed)—that Authenticom has spent much, much more time preparing its massive submission than the mere 20 days that it suggests for CDK and Reynolds to file their responses. Particularly here, where Authenticom seeks an extraordinary remedy of preliminary injunctive relief that would reverse a years-long *status quo*, the Court must proceed "cautiously." *Brown v. Miller*, 2017 WL 1401361, at *1 (W.D. Wis. Apr. 19, 2017) (citing *Graham v. Med. Mut. of Ohio*, 130 F.3d 293, 295 (7th Cir. 1997)). CDK respectfully submits that 20 days for a response is a non-starter, and that the issues raised by Authenticom's motion will require, at the very least, additional time to complete sufficient fact and expert discovery. In addition, dispositive motions are likely, which for the sake of judicial economy should be resolved prior to any evidentiary hearing. *See, e.g.*, *United States v. Bonanno Organized Crime Family of La Cosa Nostra*, 1987 WL 18172, at *4 (E.D.N.Y. Sept. 22, 1987) (determining that case would "most efficiently and fairly be adjudicated if discovery is stayed pending a decision of defendants' planned motions to dismiss and if the motions addressed to the complaint are decided before the preliminary injunction hearing is held").

As detailed in Reynolds' submission (at 10-11), the existence of Authenticom's forbearance agreement with its bankers does not trump CDK and Reynolds' right to a fair

hearing on the issues. Moreover, Authenticom itself has shown little regard for any "emergency" due to the current terms of its forbearance agreement. It waited a number of weeks (on top of years of delay before that) to file suit once the forbearance agreement was put into place (*see* Compl. ¶ 233), and even missed its own self-imposed May 10 filing deadline for its preliminary injunction motion. *See* First Emergency Mot. (Dkt. 5) at 4. Authenticom proposes, essentially, that this lost time—including its own egregious delay in bringing suit—should now be subtracted from CDK and Reynolds' response. That kind of gamesmanship should be rejected out of hand.[5]

DATED: May 19, 2017

Respectfully submitted,

/s/ *Britt M. Miller*
Britt M. Miller (*pro hac vice*)
Matthew D. Provance (*pro hac vice*)
Mayer Brown LLP
71 South Wacker Drive
Chicago, IL 60606
Tel: (312) 782-0600
Fax: (312) 701-7711
bmiller@mayerbrown.com
mprovance@mayerbrown.com

Mark W. Ryan (*pro hac vice*)
MAYER BROWN LLP
1999 K Street, N.W.
Washington, DC 20006-1101
Tel: (202) 263-3000
Fax: (202) 263-3300
mryan@mayerbrown.com

Jeffrey Allan Simmons
Joseph S. Harper
Foley & Lardner LLP

---

[5] Moreover, Authenticom admits that the forbearance agreement with its current bank is "pending the outcome" of its preliminary injunction motion. *See* Compl. ¶ 233. As detailed in Reynolds' submission (at 11 n.6), Authenticom has not come close to demonstrating that it has exhausted efforts with its current bank and any alternative lender to extend forbearance while its preliminary injunction motion remains pending before the Court.

150 East Gilman Street
P.O. Box 1497
Madison, WI 53701-1497
Tel: (608) 257-503
Fax: (608) 258-4258
jsimmons@foley.com
jharper@foley.com

*Counsel for CDK Global, LLC*