# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF WISCONSIN

AUTHENTICOM, INC.

                      Plaintiff,                  Case No. 17-cv-318

vs.

                                                  Redacted Version

CDK GLOBAL, LLC; and THE REYNOLDS
AND REYNOLDS COMPANY

                      Defendants.

## AUTHENTICOM'S REQUEST FOR A STATUS CONFERENCE
## TO SET SCHEDULE FOR PRELIMINARY INJUNCTION HEARING

Plaintiff Authenticom, Inc. ("Authenticom") respectfully requests a status conference to set an expedited briefing and hearing schedule for its motion for a preliminary injunction enjoining Defendants CDK Global, LLC ("CDK") and The Reynolds and Reynolds Company ("Reynolds") from blocking or disabling Authenticom's dealer-authorized access to the dealers' own data and from enforcing exclusive dealing provisions imposed on dealers and vendors that have the effect of blocking Authenticom. Dkt. No. 51.

Authenticom filed its motion in accordance with this Court's Local Rules on the "Procedure To Be Followed on Motions for Injunctive Relief," *see* Local Rules, including by filing a supporting brief, Dkt. No. 61, and a Statement of Facts with documentary and testimonial evidence establishing the factual basis for granting the requested relief, Dkt. No. 63. The Local Rules then imposed certain "obligations" on Defendants, including to "file and serve" a "response to the movant's statement of proposed findings of fact" stating "clearly whether [each] proposed finding is not disputed, disputed, or disputed in part." Local Rules.

1

Defendants have failed to comply with the Local Rules. Instead, Defendants have sought to circumvent the Court's procedures by seeking a summary denial of Authenticom's preliminary injunction motion. To summarily deny Authenticom's motion – without any consideration of the merits of its claim for emergency relief – would ensure its collapse, the loss of 120 Wisconsin jobs, and the consummation of Defendants' anticompetitive aim: the elimination of their last remaining competitor for data integration services. Accordingly, Defendants' opposition to Authenticom's motion should be rejected as procedurally improper.

Moreover, even putting aside Defendants' improper procedural gambit, Defendants' arguments for denying preliminary injunctive relief are fundamentally flawed. Defendants' central argument is that Authenticom has forfeited its right to preliminary injunctive relief by waiting too long to file its motion. But Authenticom sought preliminary relief promptly upon determining that its business faced imminent collapse. Before that, Authenticom used every means available short of litigation – including technological innovation and working with customers – to combat the effects of Defendants' ongoing anticompetitive conduct. "Under such circumstances, waiting to file for preliminary relief until a credible case for irreparable harm can be made is prudent rather than dilatory." *Arc of California v. Douglas*, 757 F.3d 975, 990-91 (9th Cir. 2014).

Defendants also fail to articulate any prejudice resulting from the timing of Authenticom's filing. *See Northern Star Indus., Inc. v. Douglas Dynamics LLC*, 848 F. Supp. 2d 934, 950 (E.D. Wis. 2012) ("[M]ere evidence of delay without any explanation on [defendant's] part of why such a delay negatively affected it, would not lessen [plaintiff]'s claim of irreparable injury."). Indeed, their argument makes little sense: Defendants want to *postpone* resolution of Authenticom's claims on the ground that Authenticom should have raised them *earlier*.

In any event, a claim of undue delay would be merely one factor for the Court to consider in the preliminary injunction inquiry, not a dispositive barrier to relief. *See Ideal Indus., Inc. v. Gardner Bender, Inc.*, 612 F.2d 1018, 1025 (7th Cir. 1979) (affirming grant of injunction despite delay of over four years and stating there is no "general rule that irreparable injury cannot exist if the plaintiff delays in filing its motion for a preliminary injunction"). An expedited briefing and hearing schedule works no unfair prejudice on Defendants, while putting off resolution of Authenticom's motion could allow Defendants to reap the fruits of their unlawful conspiracy before the Court has an opportunity to examine the merits. Authenticom's motion alleges a straightforward horizontal conspiracy to exclude competition, a central part of which is set forth in a formal, written agreement. It does not take extensive discovery or complicated expert opinions to resolve Authenticom's core claim. Authenticom accordingly requests that the Court enter the schedule it previously proposed (and discussed with Defendants). Dkt. No. 51.

**ARGUMENT**

**A.     The Evidence of Defendants' Illegal Conduct Is Unrefuted**

Authenticom's Statement of Facts ("SOF") demonstrates – based on documentary and sworn evidence that Defendants did not rebut – that CDK and Reynolds entered into a per se illegal horizontal agreement to eliminate competition in the data integration market. Among other evidence, Defendants entered into a written market division agreement (effective February 18, 2015) and agreed to block independent integrators like Authenticom by disabling their dealer-created login credentials. SOF ¶¶ 134-148, 173-203. The end result of Defendants' conduct has been massive price increases for data integration services. SOF ¶¶ 238-255.

The Court's Local Rules gave Defendants an opportunity to rebut those and other inculpating facts, but Defendants chose to circumvent the required procedures. With such

serious (and documented) evidence of illegal acts, it would disserve the public interest to summarily deny Plaintiff's motion for a preliminary injunction, especially where that denial would irreversibly achieve a primary aim of Defendants' conspiracy (the destruction of their last remaining competitor for integration services). *See Atlantic Coast Airlines Holdings, Inc. v. Mesa Air Grp., Inc.*, 295 F. Supp. 2d 75, 96 (D.D.C. 2003) (granting preliminary injunction in antitrust case and noting "[t]he public interest is served by ensuring no unreasonable restraints on competition"); *see also* Maas Decl. (Dkt. No. 56) (declaration from the President of the California New Car Dealers Association, representing over 1,100 car dealerships, detailing harm caused by Defendants' anticompetitive conduct); Fitkin Decl. (Dkt. No. 53) (car dealer detailing harm); Longpre Decl. (Dkt. No. 55) (same); Korp Decl. (Dkt. No. 54) (vendor detailing harm).

**B.     Authenticom's Harm Only Recently Crystallized Into Irreparable Harm That Threatens Its Existence**

Authenticom did not delay in seeking a preliminary injunction. Rather, Authenticom promptly sought preliminary relief from this Court upon determining that its harm was irreparable because its business is facing imminent bankruptcy – and only after trying to save its business through means other than litigation.

Before filing its complaint and motion, Authenticom made every effort to save its business without resorting to litigation. Early on, Reynolds was the only DMS provider blocking data integrators, and Authenticom, CDK, and others were able to continue serving Reynolds DMS customers by working cooperatively with dealers to overcome Reynolds's blocking tactics. SOF ¶ 87, 109. The situation worsened dramatically, however, after CDK made an about face and Defendants entered into their horizontal conspiracy in February 2015, and then began extensive, coordinated blocking in August 2016 (and continuing over the ensuing months). *E.g.*,

SOF ¶¶ 196-201.  Even in the face of their joint blocking, Authenticom tried everything it could to save its business without litigation, including redirecting most of its workforce to work with dealers to reestablish disabled login credentials and mitigate the service disruptions.  SOF ¶ 210.

Ultimately, Authenticom was unable to overcome the effects of Defendants' unrelenting blocking of dealer data.  Authenticom's revenues and profits experienced sharp declines after Defendants entered into their horizontal agreement in 2015, and accelerated in late 2016 and early 2017 after Defendants stepped up their joint blocking.  *See*, *e.g.*, ███████████████████████████████████████████████████████████████████████

During this time, Authenticom continued to seek a business solution – by working with its dealer and vendor customers to provide integration services despite Defendants' conduct – in addition to seeking opportunities to refinance its financial obligations.  But, in mid-February 2017, both banks with which Authenticom had longstanding relationships – BMO Harris Bank and Citizens State Bank – rejected Authenticom's requests for additional financing, citing concerns about Authenticom's viability in light of Defendants' conduct.  *Id.* ¶ 33.  ████████████████████████████████████████████████████████████████████████████████████████████████████████  When faced with this imminent threat of insolvency, and after exhausting all non-litigation avenues, Authenticom filed its complaint and – a little more than two weeks after that – moved for a preliminary injunction.[1]

---

[1] The timing of Authenticom's motion comports precisely with the Seventh Circuit's legal standard, which requires businesses seeking a preliminary injunction to show that insolvency is imminent rather than speculative.  *See Gateway E. Ry. Co. v. Terminal R.R. Ass'n of St. Louis*, 35 F.3d 1134, 1140 (7th Cir. 1994) (insolvency within six months).  If Authenticom had sought an injunction any earlier, Defendants would have claimed the harm was too speculative.  Moreover, Authenticom appropriately sought to mitigate Defendants' damage to Authenticom's reputation and goodwill before filing its lawsuit and request for preliminary injunction.

Defendants' delay argument is inapposite in this "context of ongoing, worsening injuries." *Arc of California*, 757 F.3d at 990-91. "Under such circumstances, waiting to file for preliminary relief until a credible case for irreparable harm can be made is prudent rather than dilatory." *Id*. Indeed, "parties should not be encouraged to sue before a practical need to do so has been clearly demonstrated." *Tom Doherty Assocs., Inc. v. Saban Entm't, Inc.*, 60 F.3d 27, 39 (2d Cir. 1995) (upholding preliminary injunction); *see also Texas Children's Hosp. v. Burwell*, 76 F. Supp. 3d 224, 244-45 (D.D.C. 2014) (rejecting argument that plaintiff's three-year delay in filing suit undercut its claim for irreparable harm where the plaintiff "reasonably pursued non-litigation avenues first").

In short, waiting to file until irreparable harm is imminent is not undue delay. Authenticom brought this lawsuit and motion for preliminary injunction as a last resort. Authenticom is not in the business of litigation; in its 15-year history, it has never brought a single lawsuit before this one. As a relatively small company, Authenticom has been understandably reluctant to take on the deep-pocketed CDK and Reynolds. Authenticom took on that burden only when it had no other options.

**C.     In Any Event, Any Delay Is Not Prejudicial and Does Not Undercut Authenticom's Irreparable Harm**

Even if Authenticom had delayed in bringing its motion for a preliminary injunction (and it did not), that would not undercut Authenticom's claim of irreparable harm or short-circuit the standard preliminary injunction analysis. Defendants' arguments to the contrary misstate the law and rely on inapposite cases.

Under Seventh Circuit law, there is no "general rule that irreparable injury cannot exist if the plaintiff delays in filing its motion for a preliminary injunction." *Ideal Indus.*, 612 F.2d at

1025 (affirming grant of injunction despite years-long delay). Moreover, "mere evidence of delay without any explanation on [defendant's] part of why such a delay negatively affected it, would not lessen [plaintiff]'s claim of irreparable injury." *Northern Star Indus.*, 848 F. Supp. 2d at 950. Indeed, for this very reason, one of the cases relied on by Defendants – *Ty, Inc. v. Jones Group, Inc.*, 237 F.3d 891 (7th Cir. 2001) – affirmed a district court decision granting a preliminary injunction despite the plaintiff's delay in bringing its motion. *See id.* at 903 ("delay alone, without any explanation" by Defendants as to why that "delay negatively affected them," does not negate irreparable harm). Here, Defendants do not even attempt to explain how Authenticom's supposed delay in seeking a preliminary injunction has prejudiced them. Indeed, Defendants could have no valid reliance interest in continuing their unlawful conspiracy. Defendants' failure to articulate any delay-related prejudice is sufficient reason, standing alone, to reject their premature oppositions to Authenticom's motion.[2]

In any event, even where the plaintiff delayed in claiming irreparable harm, and even where the defendant has shown some prejudice resulting from that delay, that is still just one factor in the preliminary injunction calculus – not (as Defendants falsely claim) a dispositive barrier to relief. *See Ideal Indus.*, 612 F.2d at 1025 ("[D]elay is only one among several factors to be considered; these cases do not support a general rule that irreparable injury cannot exist if the plaintiff delays in filing its motion for a preliminary injunction."); *Floralife, Inc. v. Floraline Int'l, Inc.*, 633 F. Supp. 108, 113 (N.D. Ill. 1985) ("mere delay in filing for preliminary injunction does not bar relief"); *Freund, v. UBS Fin. Servs., Inc.*, 2015 WL 10684494, at n.3 (N.D. Ill. 2015) ("It is well-settled that delay will not vitiate established irreparable harm."); *Arc*

---

[2] *See Northern Star Indus.*, 848 F. Supp. 2d at 950 (granting preliminary injunction where defendant offered "no affirmative evidence" that plaintiff's delay in bringing the motion negative affected it); *National Fin. Partners Corp. v. Paycom Software, Inc.*, 2015 WL 3633987, at *13 (N.D. Ill. 2015) (same).

*of California*, 757 F.3d at 990-91 ("[D]elay is but a single factor to consider in evaluating irreparable injury; courts are loath to withhold relief solely on that ground.").

The cases relied upon by Defendants do not support any contrary principle. Most of Defendants' cases are intellectual property suits, a context in which defendants may invest substantially in a product that, unbeknownst to them, is potentially infringing.[3] In still other cases, the plaintiff brought suit and subsequently unreasonably delayed in moving for a preliminary injunction *after the filing of the complaint*, even though the alleged harm did not change over time – a fact pattern inapplicable here where Authenticom filed its motion for a preliminary injunction a little more than two weeks after filing its complaint.[4]

In this case, even if Defendants could demonstrate some prejudice from the timing of Authenticom's filing, that prejudice cannot possibly outweigh the imminent and irreparable harm that Authenticom will suffer if Defendants' *per se* unlawful conduct, of which Authenticom has already marshaled ample evidence, is not promptly enjoined.

**D.      There Is No Need for a Prolonged Briefing Schedule Prior to a Hearing**

Defendants have no basis for objecting to a prompt hearing on Authenticom's motion when relevant allegations are entirely within their knowledge and where the principal claim of illegal conduct – a per se unlawful market division and group boycott – violates the Sherman Act irrespective of the particular characteristics of the market.

---

[3] *See*, *e.g.*, *Wisconsin Cheese Grp., Inc. v. V & V Supremo Foods, Inc.*, 537 F. Supp. 2d 994, 1001 (W.D. Wis. 2008) (14-year delay barred suit for trademark infringement in part because "a trademark owner has an affirmative duty to police his trademark"); *Tom Doherty Assocs.*, 60 F.3d at 39 (explaining distinct delay considerations in intellectual property context).

[4] *See*, *e.g.*, *Mortensen v. Mortgage Elec. Registration Sys., Inc.*, 2010 WL 11425328, at *8 (S.D. Ala. 2010) (delay "many months after the inception of this case"); *Imagenetix, Inc. v. GNC Holdings, Inc.*, 2013 WL 12100701, at *3 (S.D. Cal. 2013) (waiting to seek preliminary injunctive relief for more than a year after filing suit even though harm from alleged patent infringement never changed).

Authenticom gave Defendants notice of its complaint, preliminary injunction motion, and three experts almost a month ago. In an effort to see if the parties could resolve their dispute without litigation, on April 25, 2017, Authenticom provided Defendants with a draft of its complaint, made clear that it would be moving for a preliminary injunction, and also provided the names of its three experts and the topics on which they would be preparing their reports. After Authenticom filed its complaint, the parties engaged in a meet-and-confer process discussing the briefing and hearing schedule for the preliminary injunction motion, and again discussed the identity and topics of Authenticom's experts. Defendants abruptly cut those discussions short by filing their premature oppositions to Authenticom's motion.[5]

Defendants claim that they need months to retain experts and conduct wide-ranging discovery. Neither is true. Defendants have had nearly a month to hire experts and start preparing their responses. Moreover, Authenticom's experts provide opinions on three straightforward issues:

- **Peter W. Swire** – a data security and privacy expert – opines that "there is no security or privacy need that justifies CDK's and Reynolds' wholesale blocking of Authenticom and other independent Data Integrators from offering data integration services," particularly where "the practices used by Authenticom (and CDK's own subsidiaries, Digital Motorworks and IntegraLink) are substantially similar to the practices used by Data Integrators in the health care and financial industries when dealing with even more sensitive information." Dkt. No. 58, ¶¶ 5, 33.

- **Hal J. Singer** – an antitrust and economics expert – opines that Defendants' anticompetitive conduct has harmed competition by "rais[ing] prices for dealers and app providers, but did not provide dealers with any offsetting benefit." Dkt. No. 60, ¶ 69.

---

[5] Authenticom's good-faith discussions with Defendants explain how Defendants were prepared to file their oppositions to Authenticom's motion within hours after Authenticom's filing.

9

- **Gordon Klein** – an accounting expert – opines on the "imminent threat to [Authenticom's] viability." Dkt. No. 59, ¶ 4.

None of these issues is new to Defendants. Defendants have justified their anticompetitive conduct by saying it is necessary to protect "data security," and so are within full possession of whatever information they need to support that proposition. Authenticom's claim focuses on Defendants' own collusive conduct and Defendants' own price increases, and they are in full possession of all of those facts too. Finally, with Mr. Klein's report, Authenticom provided Defendants with full information regarding its financial condition. Indeed, on the same day that Authenticom filed and served its expert reports, Authenticom produced to Defendants all of the materials on which its experts relied in preparing their opinions.

Defendants also fail to identify any specific fact discovery they need. This case is about Defendants' anticompetitive conduct. Authenticom has already amassed, without discovery, significant evidence of Defendants' illegal conduct sufficient to satisfy its burden for a preliminary injunction, including documentary evidence of Defendants' illegal agreement and testimony regarding the admissions by Defendants' senior executives that they are engaged in a joint effort to block Authenticom and exclude competition in the market. If Defendants have evidence to rebut Authenticom's Statement of Facts, they can come forward with it.

Accordingly, Authenticom respectfully requests that the Court enter the following schedule suggested by Authenticom in its motion, Dkt. No. 51, and discussed with Defendants:

- June 7, 2017, for Defendants' opposition papers;
- June 16, 2017, for Authenticom's reply papers, if any; and
- June 22 and 23, 2017 (or at the Court's earliest convenience) for a two-day evidentiary hearing.

**CONCLUSION**

The Court should reject Defendants' premature oppositions to Authenticom's motion for a preliminary injunction and, if the Court believes Defendants should be afforded an opportunity to file additional oppositions, set an expedited briefing schedule and hearing on Authenticom's motion.

Dated: May 22, 2017

Respectfully submitted,

*s/ Jennifer L. Gregor*
Jennifer L. Gregor
Mark W. Hancock
GODFREY & KAHN, S.C.
One East Main Street, Suite 500
Madison, WI 53703
Phone: (608) 257-3911
Fax:     (608) 257-0609
Email: jgregor@gklaw.com,
          mhancock@gklaw.com

Michael N. Nemelka *(pro hac vice)*
Aaron M. Panner *(pro hac vice)*
David L. Schwarz (*pro hac vice*)
Kevin J. Miller (*pro hac vice*)
Derek T. Ho *(pro hac vice)*
Joshua Hafenbrack *(pro hac vice)*
Joanna T. Zhang *(pro hac vice)*
KELLOGG, HANSEN, TODD, FIGEL
   & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Phone: (202) 326-7900
Fax:     (202) 326-7999
Email: mnemelka@kellogghansen.com
          apanner@kellogghansen.com
          dschwarz@kellogghansen.com
          kmiller@kellogghansen.com
          dho@kellogghansen.com
          jhafenbrack@kellogghansen.com
          jzhang@kellogghansen.com

*Attorneys for Plaintiff Authenticom, Inc.*